A WRIT of fieri facias, for satisfaction of a judgement, rendered by Hanover county court, in an action, which the defendent had prosecuted against his father, of the same name, for *4971/ Is/ lid/ 3q/ with interest and costs, was delivered in may of the year 1792, to the plaintiff John Clough, a deputy of the other *288 plaintiff, who was sheriff of Hanover, to be executed.
The plaintiff John Clough, by that authority, seised the whole estate of John Bullock, the father, and sold it, for 2061,’ 3s,’ 6d,’ to the defendent, who was highest bidder, in june, 1792.
In january or february, 1795, William L. Thompson applied to the defendent for settlement of” an account of taxes, fees, &c. amongst which was the plaintiff John Cloughs bill of the commission, claimed by him from the defendent, for serving his execution against his father. The defend-ent then refused to enter upon the settlement, unless the plaintiff John Clough should be present, and desired Thompson to appoint a time, when those three parties should meet together, at the defendents house, for adjusting this business, alleging, that, as he conceived, the plaintiff John Clough was not entitled to so much, as he had charged, for commission, at the same time, the defendent, who had enquired of Thompson whether the plaintiff Clough had returned the execution, which enquiry was answered uncertainly, said he wished the plaintiff not to return it until the settlement.
This fact, namely, that the defendent said he wished the plaintiff John Clough not to return the execution before the settlement, is testified by a single witness, and was said not to be proved, because the defend-ent, as was supposed, contradicted it by his answer, sworn by him to be true, but the answer doth not contradict the testimony, the bill stated, that the plaintiff in the judgement, now defendent, who, in june, 1792, bought all his fathers property, when it was exposed to sale by the fieri facias, and who acknowledged the receipt of it by a certificate, at the same time, that is in june, 1792, desired and requested the plaintiff John Clough, to retain the execution, and not deliver it into the clerks office, until they should have an opportuniy of making a statement and settlement, to this the defendent answers in these terms: ‘he positively denies that he requested the complainant Clough, to retain the execution, and not deliver it into the clerks office, until they should have an opportunity of making a statement and settlement, nor did he use any expression [that is, as the court understands it, use any expression, at that time, to Clough] having any tendency to keep up the execution; on the contrary, he positively avers, that he requested m’r Clough to return the execution, and that he often repeated the request, before he made the motion for the judgment now enjoined.’ all this may be true; and yet *'the deposition of the witness, that the defendent, in a conversation between them, 32 or 33 months afterwards, said to a collector, ‘he wished John Clough would not return the execution until the settlement between him and the defendent,’ may be true likewise, if the fact here contested, that is, the defendents consent to the plaintiffs retention of the execution, had been denied by the answer, in direct opposition to the testimony, the latter, accredited by probability, from the confessedly true circumstances of the fathers inability to discharge more of the judgment, and from the consequential insignificance of a return; from the enquiry whether the precept had been returned, and from the unsettled account of the commissions, would outweigh the former.
' Upon this occasion, the court observed the danger, to which a plaintiff exposeth himself, when, in propounding interrogatories, he requireth a defendent, as is done in almost every bill in equity, to admit or deny facts, which the plaintiff could, otherwise, prove or disprove satisfactorily, by a single witness to each; for where a defend-ent affirmeth or denieth a fact, of which he is required to discover the truth or falsity, and of which to give testimony in his answer he is compelled by the plaintiff, the matter controverted must be in aequilibrio, if either a greater number of witnesses do-not contradict the answer, or coincident circumstances do not add a preponderating momentum to the testimony of a single contradicting witness; whereas if a discovery be not required, a defendent is not bound to answer upon oath, and, against his answer, whether on oath or not, in such a case; the simple testimony of one credible witness is affirmed to be prevalent over the answer; in other words the answer is. no more than a partys allegation without oath.
To return from this digression — at a time, for the ptaintiff John Clough to attend, appointed by the defendent, when a final settlement was completed, and at other times, the defendent acknowledged, that he did not expect to get any thing more from his father — that, in truth, his father then had no estate — adding, that imprisonment of his fathers body, which was all that his creditors could now take, would be distressing to the defendent. and here one might expect he would have rested, yet,
On the 7th of may, 1795, upon a motion on his behalf, the court of Hanover county fined the plaintiff Park Goodall, for the use of the defendent, (a) 2641,’ 8s,’ 9d/ for the plaintiff John “'Cloughs default in neglecting to return the fieri facias, in august, 1792, as the writ required y and condemned him to pay the fine with costs.
This procedure was authorized by the statute in 1791, reciting, that ‘doubts have arisen in what manner judgement should be rendered against any sheriff, coroner, or *289 sergeant of a corporation, who shall fail to return an execution to the office from whence it issued, on or before the return day thereofand enacting, that, where any writ of execution, or attachment for not preforming a decree in chancery, shall come into the possession of any sheriff, coroner, or sergeant of a corporation, and he shall fail to return the same to the office, from whence it issued, on or before the return day thereof, it shall be lawful for the court, ten days previous notice being given, upon the motion of the party injured, to line such sheriff, coroner, or sergeant of a corporation, at their discretion, in any sum, not exceeding five dollars per month, for every one hundred dollars contained in the judgment or decree, on which the execution or attachment, so by him detained, was founded, and so in proportion for any greater or lesser sum, counting the aforesaid months from the return day of the execution or attachment to the day of rendering judgment for the said fine.’
The plaintiffs counsil objected, that the fine was not appropriated by the statute, to the use, although it was recoverable on the motion, of the party injured; affirming that all fines, before the revolution were payable to the king; and observing that now such as were not differently devoted or abolished were, by the constitution, transferred to the commonwealth.
This is incorrect, not all fines, but only those inflicted for offences against the government, were formerly payable to the king, the fine in this case is appropriated to the party injured, because it is recoverable on the motion, that is, by the action, of the party injured, an action is a juridical vindication of that which the actor allegeth to be due to him. he, therefore, who hath the right to the action, hath per hypothesin, the right to the thing demanded — recovers that which is due to him.
The plaintiff Park Goodall, the sheriff, condemned for the mulct incurred by the default of his deputy, the other plaintiff, instituted, in Hanover county court, a process, and obtained a *sentence, against him, for reimbursement, but consenteth to suspend the further prosecution of that demand, unless it shall become necessary by decision of the questions, now controverted.
Whether any fine, except a (b) conditional fine, ought to have been inflicted, for not returning the fieri facias? if the fine were excessive, or otherwise unrighteous, whether, in the language of the answer, ‘any matter of equity be suggested in the bill, which can give to this court jurisdiction?’ and, whether such matter, although not suggested in the bill, appear in the case, as will justify the courts interposition— give it jurisdiction?
The court discussed these questions in the following terms:
The neglect to return the precept was not, could not be (c) detrimental to the defendent. he doth not even pretend, it to have been so. the neglect to return the precept, if it were not and could 'not be detrimental to the defendent, was not injurious to him. besides if William E’ Thompson may “be credited, the return of the fieri facias was retarded, if not by desire, with consent, of the defendent; and volenti non fit injuria, the sentence of Hanover court, authorized to inflict a fine on motion of a party INJURED only, inflicting that fine on motion of a party (d) NOT injured, is, therefore, a void act. and after answer filed, and no plea in abatement to the jurisdiction of the court, (for surely this answer deserveth not to be called a plea in abatement,) this court is prohibited, by statute in 1787, *ch’ 9, to admit an exception for want of jurisdiction, or to delay or refuse justice, the defendents counsil, by these words, dictated to his client: ‘this respondent cannot conceive the defence set up by the complainant Clough to be better in a court of equity than of law,’ is supposed to have meditated an objection to this purpose: the statute authorising the procedure by motion against the officer who neglects to return a writ of execution or attachment, entrusted the court of common law with the discretive power, the power to moderate the fine; and the court of equity, controuling them in that discretion, in effect directly reversing a legal judgment, would usurp appellate arbitrary jurisdiction, which objection, if to listen to it, in the form, not of a plea in abatement, but, of an answer, be not prohibited, is repelled thus: the execution was returned in june, 1795. the return put the parties in the state in which they ought to be — the state in which return of the execution in june, 1792, would have left them, and in which if they had been left, the officer would not have incurred a penalty, but the court of common law could not alter their adjudications, which *290 were “prior to the return — could not put the parties in the state in which they ought to he. so that a fitter case for equitable relief than this cannot be propounded, (e).
Again, according to the testimony of the witness Thompson, when the plaintiff John Clough asked the defendent, if he then, that is, at the settlement of their accounts, wished the plaintiff John Clough to return the fieri facias? the defendent, in the language of the witness, ‘signified that it was immaterial — he, the said Clough, might make his return, when it was convenient.’ the defendent, if he said so to the plaintiff Clough prosecuting his motion for the fine afterwards, was guilty of a foul fraud, and in these days surely the rectitude of this courts interposition in the case of a fraud, —'a fraud not appearing to have been known to the county court, — will not be reprobated, it would have been venial in the eyes of Edward Coke.
Moreover Hanover court, in their sentence, were as severe almost as they could be', condemning one to pay more than eight hundred and eighty dollars, for an omission by which no man could ' loose so much as the hundreth part of one dollar, and this too, notwithstanding the paragraph of the statute, *which authorized the condemnation, taught them that they should exert their power with discretion— discretion, in the language of grammarians, a verbal noun, from discernere, i,’ e,’ to perceive, or note, a difference, suggesting, by its etymon, the requisite discrimination in the censure of human actions, and intimating that the penalties to be incurred for them should be analogous to the malignity of them, not inflicted with draconic rigor.
A short reviqw of the jrinciples whence is derived the power exercised by the court of equity, when it exonerates intirely from penalties or alleviates them, may be herd expedient for justifying that exercise, not only in all cases of voluntary conventional assumption, but, in, some cases of legislative imposition, of penalties.
Sympathy, fellow-feeling, experience early and universaly, seems a natural affection, homo sum: humani nihi ame alienum puto. Terentii hautontimor. ’ it disposeth every man, not perverted by the trade of rapine, or of what in cant-phrase is called speculating, to approve, at least in theory, the praecept, ‘all things whatsoever ye would that men should do to you, do ye even so to them;' — a sentiment, which the spirit of justice exhales, and which the ministers of justice ought upon every occasion to inculcate.
Exaction of the penalty, denounced or stipulated for nonperformance of a duty, in every case where it would be stricto jure demandable, would contravene that divine praecept.
Agricola, bound to carry 100 measures of corn, which he had sold, and for which he had received the price, and to deliver them on the first day- of may, to Mercator in a warehouse at Alexandria, doth not deliver them, for which failure, in terms of the obligation, he is obnoxious to the penalty of five hundred dollars, the warehouse is burned next day, before the commodity could have been used or disponed; so that it would, in case of accurate performance, have perished in the combustion, in this case, the people, whose system of jurisprudence would allow Mercator to recover his penalty, besides profiting by salvation of his corn,, which remains unimpaired in the garner of Agricola though his default occasioned it, can have derived little benefit from that philological erudition, by which the manners of men are polished, and their sentiments refined."
The corn, destined for a transmarine market, is not put on board, so that the vessel performs the voyage, without a full lading, the product from sale of what was exported is, by mean of an accidental saturity, not equal to the freight*; so that *here too, Mercator is a gainer,— a gainer (f) by how much his loss would have been greater if the burden of the vessel had been complete
A cargo, deliverable on the first day of may, which arrives not until a week after-wards but as soon as the buyer could be prepare,d to receive it, is refused.
In these cases the penalties, if any were menaced by clauses for that purpose in the contracts, would be strictly forfeited,' but, upon what principle, we will not.say with what grace, could thej' be demanded?
They could not be demanded conscientiously, to make reparation of damage for a wrong. no damage was sustained, reparation and damage are correlatives, if the one exist not, the other cannot be,due.
The penalties could not be demanded, to make atonement for an offence against society, by failure to perform a moral duty, in that case the piaculum is due to the public, if to any; certainly not to a private citizen; although the defendent seemeth to have clamed it, by these words in his answer: ‘it is a neglect of duty, to which the said Clough has been much accustomed.’ nor were comminations of penalties, for failures to perform private duties, invented for preservation of good or reformation of bad manners, men rarely, if ever, in their ordinary dealings, are studying ethics.
Yet in such cases, the courts of law formerly condemned the party delinquent to pay the mulct, enormous as it was. they could do or supposed they could do nothing less, they, the lex loquens, were bound to pronounce the sentence which the law prescribed, though barbarous it seem, the *291 contract, which, obliging-parties to perform it, is a law to them in these instances, prescribed the sentence, that the penalty for non-performance must be paid.
In some of the cases supposed, and others, which will occur to an attentive auditory, he, who might have been ruined by anothers fidelity, is not only saved by his infidelity, but would be enriched by the penalty, which is demandable by strict adhaesion to the letter of the contract, the taw enjoins performance, and is deaf to deprecation, leges rem surdam, inexora-bilem esse, — nihil laxamenti nec veniae habere — said the Vitellii, Aquilii, and the sons of Brutus, Livii histor,’ lib’ 11, cap’ 3, 4. . ,
. , lint is not social happiness rationaly consulted, by confiding to some the power to mitigate legal ametrical severity?
*The law, if its text condemn one, for neglecting to do what he had obliged himself to do, which neglect is, not only not detrimental but, beneficial to another, nevertheless to pay the same penalty as it would have condemned him to pay, if the default, instead of being fortunate, had been detrimental in the extreme, ought, in such a crisis, to be dumb as well as deaf, if how to silence it on such an occasion seem a digrms vindice modus, justice, if he could, assisted by epic or dramatic machin-Horat.' ery, introduced her in a visible form, like Pallas, whom Aeschylus fabled to have appeared in the case of Orestes, would indicate,
that he, who would have been unfortunate, if a default had not happened, ought not to be doubly fortunate by the default; (g)
and further, if the default had not been intirely compensated by the fortunate escape of loss, justice, suspending her balance, and putting the detriment and penalty in opposite scales, and taking out of that which contained the latter, until the beam should settle in a horizontal position, (h) would signify that she approved the liberal and benign doctrine inculcated in the court of equity, that forfeitures, intended to compensate detriment, are irrational, because, at the times when they are fixed, they cannot be subjects of isometrical corn-putation; and that *they are odious, because being extensive enough to cover the detriment, in any event, they must be extravagant in almost every event.
This is believed to be the rationale of the daily practice of relieving against forfeitures, by the court of equity, which, if no detriment hath been suffered, exonerates from the forfeiture, intirely, and, if detriment hath been suffered, exonerates from so much of the forfeiture as exceeds the detriment. by which accommodation parties are put into the state in which they ought to be, neither gaining nor losing more than they would have gained or lost if no default had been; the state in which they would have fjrovided, by the contract, they should be, if the quantum of detriment, to be occasioned by the default, could then have been ascertained exactly, and thus the court of equitys sentences in relieving against forfeitures, are genuine interpretations of the parties words, and apocalypses of the spirit which prompted the words.
The defendents counsil, when a motion was made to dissolve the injunction which had been awarded, to coerce him from suing forth execution in satisfaction of his judgment, affirmed, that the power of the court of equity to relieve against penalties and forfeitures, did not extend to the cases of penalties and forfeitures inflicted by statutes, although inflicted solely for availment of private citizens, for which distinction a plausible reason cannot as is conceived, be assigned, since the vigor of obligation to pay the statutory mulct, and of the obligation to pay the conventional mulct, is unquestionably derived from the same source, consent of the obligors, that consent indeed is not yielded in the same manner. but this difference, if influential, would favor the relieving power, in case of the statutory, more than in case of the conventional, mulct, because the consent was signified, in the latter, by an act of the party himself, in the former, by an act of his representative, the legislature.
Upon principles herein before stated, an officer, sentenced to pay a fine for not returning a writ of capias ad satisfaciendum, or an attachment in execution of a decree in chancery, who, returning the precept after the sentence, sheweth, as satisfactorily as hath been done in this case, that the creditor had not been damnified, would be entitled to like relief as is afforded by the following decree:
That the injunctions, which were awarded to restrain the defendent and the plaintiff *292 Parke Goodall from suing forth .executions of their judgments, respectively, be perpetual. _

 Upon what principal, and hy what ratio, this fine was calculated doth not appear by the sentence, if the one were 2901’ 18s,’ lid,’ 3q,’ which remained unsatisfied of the debt recovered, and the other five per centum per mensem, the fine would have somewhat exceded 4641.’ if the principal were the whole debt recovered, the words of*the statute, ‘it shall be lawful to fine the sheriff in any sum, not exceeding: five dollars per month, for every hundred dollars CONTAINED in the judgement’ would have authorized infliction of a fine somewhat exceding 7941.’' of the fine actualy inflicted, that it might have been greater seems the best apology for the hyperbole.— Note in edition of 1795.

'Pile court might have inflicted the fine conditionals', reserving power to abrogate the sentence, upon the sheriffs returning the writ, and making amends for any damages and costs occasioned by detention of it. — Note in edition of 1795.

 How the neglect to return the writ, in this case, could have been detrimental to the present defendant, to whom the whole estate of his debitor had been transiered, and who could get nothing more from him. is not discerned, the defendant cannot avoid the objection by saying he might have been reciuired in a controversy with some other creditor, to prove identity of the slaves taken in execution, the names of which, for enabling him and others to do so, the statute requires to be endorsed on the writ; because the debitors whole estate, which must include his slaves, whether their names were or were not endorsed, appears to have been sold to the defendant; so that any proof reqnireable from him would have been exhibited by that creditor himself, when he should prove the slaves, for which he was prosecuting his clame, to have been a part of the debitors estate before the sale. — Note in edition of 1795.

 If the argumentation in the note next preceding be fallacious, which, however, it is not yet perceived to be, the sentence ought, as is conceived, not only to have affirmed the defendent to be a party injured, but, to have specified the injury: and without such affirmation and specification, this court ventures to presume the defendent to be a party NOT injured, and, at law as well as in equity, not intitled to the fine. — Note in edition of 1795.

 The court of equity relieves against ttie forfeiture, in case of a mortgage, after a judgment in ejectment for possession of the land; relieved before application to that tribunal was by statute rendered unnecessary, against the penalty, after a judgment for it in an action of debt upon a bond, why may not that court relieve against the fine or penalty in this case? — Note in edition of 1795.

 Ciceros magnum vectigal fit parsimonia, in bis 6 paradox, hoti monos soplios plousios is translated, by englisb lexicographers, ‘a penny saved is a penny got. ’ — Note in edition of 1795.

 For Agrícola to arrogate a merit from his own •default, because it was iortunate to Mercator, would be futile, but for Mercator to have the corn -by tlie default, and to have his penalty too by the default, whereas he must have been without both in case of no default, would be absurd, the design of the law compelling payment of penalties for non-performance of contracts was that the delinquent parties should make antidosis and thereby do justice, the law is the ordinary minister of justice, when the law, executing the precepts of justice, exacts the penalty, although no detriment, for which the penalty should be the retribution, had emerged, the law thwarts the design of justice, whicli then, by its extraordinary minister, aequity. controuls the law. — Note in edition of 1795.

 rf, as has been supposed, the party, who hath not suffered any detriment by the default, be not entitled in equity to the penalty: he onght to take onlv so much of the penalty as is equal to the detriment, if any he had suffered, a penalty threatened for not performing a contract is not like a wager, in which the whole stake is lucrative, this was the primary and the sole object of the adventurers. they submit to the jurisdiction oi fortune, an arbiter blind to merit and demerit, whereas, in a contract, the object is not pure lucre, but, a commerce, mutualy beneficial, the parties intend to perform, not to forfeit, sometimes, when they forsee probability, that performance may be intercepted. or may be not eligible, resorting to calculation, they adjust the penalty by an aequation of it with the detriment, but when a penalty doth not appear to have been the result of calculation, the emblem ot justice is an index signifying a requisite aequilibrium of wrong and reparation, and a consequent defalcation of penalty. — Note in edition of 1795.